UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| VERONICA MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13 CV 64 |
| | ) | |
| PROGRESSIVE PALOVERDE | ) | |
| INSURANCE AGENCY, INC. | ) | |
| d/b/a PROGRESSIVE INSURANCE | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the court on plaintiff Veronica Martin's amended motion to remand this case to state court. (DE # 7.) On January 17, 2013, plaintiff filed the current suit in LaPorte County Superior Court. (DE # 1.) Defendant Progressive Insurance subsequently removed the case to this court. (DE # 2.) Plaintiff then filed a motion to remand the case to state court (DE # 5) and an amended motion to remand the case to state court (DE # 7). Defendant filed a timely response. (DE # 8.) For the following reasons, that motion is denied.

I.  Factual Background

Plaintiff alleges that on December 5, 2010 she was involved in a motor vehicle accident with an underinsured driver. (DE # 1.) Plaintiff further alleges that this accident resulted in plaintiff suffering physical injury and property damage. (*Id.*) Plaintiff alleges that at the time of the accident, defendant was plaintiff's automobile

insurer. (*Id.*) Plaintiff's insurance policy ("the insurance policy") with defendant included coverage for accidents involving uninsured and underinsured drivers. (*Id.*)

Plaintiff alleges that defendant had a duty under the insurance policy to pay plaintiff benefits above the benefits paid by an underinsured driver's insurance company. (*Id.*) After the accident, plaintiff settled with the underinsured driver's insurance company for the underinsured driver's policy limit. (*Id.*) Plaintiff also alleges that she demanded that defendant pay her the benefits she is owed, but that defendant refused, and plaintiff therefore filed this lawsuit. (*Id.*) In her complaint, plaintiff seeks damages for breach of contract, and also seeks punitive damages. (*Id.*) Plaintiff does list a specific amount of damages in her complaint. (*Id.*)

## II.     Analysis

Defendant removed this action to federal court under 28 U.S.C. §§ 1441 and 1446. (DE # 2.) Under Section 1441(a):

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

Defendant contends that this court has original jurisdiction over this case under 28 U.S.C. § 1332(a)(1), the diversity of citizenship statute. (DE # 2.) Section 1332(a)(1)

states that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" In her amended motion to remand, plaintiff does not contest the "citizens of different States" requirement. Instead, plaintiff argues that "no evidence exists to support [defendant's] claim that the amount in controversy exceeds [$75,000.]" (DE # 7 at 2.)

In *Oshana v. Coca–Cola Co.,* the Seventh Circuit Court of Appeals explained the standard for meeting the amount in controversy requirement in cases removed to federal court. 472 F.3d 506 (7th Cir. 2006). "[T]he amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins, or in the event of removal, on the day the suit was removed." *Id.* at 510. In general, the proponent of jurisdiction has the burden of showing by a preponderance of the evidence facts that suggest the amount in-controversy requirement is met. *Id.* Obviously, that is easier said than done when the plaintiff does not want to be in federal court and provides little information about the value of her claims. *Id.* In such a case, "a [defendant's] good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Id.*[1]

---

[1] In her amended motion to remand, plaintiff argues that defendant, as the removing party, must "establish any disputed aspect of jurisdiction by offering 'evidence which proves to a reasonable probability that jurisdiction exists.'" (DE # 7 at 3 (citing *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997)).) The Seventh Circuit has abandoned the "reasonable probability" standard. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006); *see also Back Doctors Ltd. v. Metropolitan Property and Cas. Ins. Co.*, 637 F.3d 827, 829 (7th Cir. 2011).

The Seventh Circuit has given several examples of how a removing defendant can establish the amount in controversy in a given case: "[B]y contentions interrogatories or admissions in state court; by calculation from the complaint's allegations . . . ; by reference to the plaintiff's informal estimates or settlement demands . . . ; or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands . . . ." *Sadowski*, 441 F.3d at 541-42. "[O]nce the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Oshana*, 472 F.3d at 510–11. Ultimately, the question is whether it is legally impossible for the plaintiff to recover greater than the jurisdictional amount. *LM Ins. Corp. v. Spaulding Enter. Inc.,* 533 F.3d 542, 553 (7th Cir. 2008).

In her amended motion to remand, plaintiff asserts that the maximum total amount she could recover under the insurance policy is $75,000 (DE # 7 at 4),[2] but that

---

[2] The maximum amount payable under the insurance policy is $100,000. (DE # 7 at 4.) Plaintiff received $25,000 from the underinsured driver's insurance company (DE # 5 at 10), and the parties agree that $75,000 is the total amount recoverable under the insurance policy.

When the validity of an entire insurance policy is at issue, the amount in controversy is indeed the face value of the policy. *Hawkins v. Aid Ass'n for Lutherans,* 338 F.3d 801, 805 (7th Cir. 2003). In disputes regarding the applicability of an insurance policy to a particular occurrence, however, the amount in controversy is the value of the underlying claim, not the face value of the policy. *Motorists Mut. Ins. Co. v. Simpson,* 404 F.2d 511, 515 (7th Cir. 1968). Although it is not clear whether defendant is contesting the validity of the entire insurance policy at issue in this case, defendant does argue that the court must determine the value of the underlying claim in ruling on plaintiff's amended motion to remand. (DE # 8 at 4.) The court will therefore assume that this is the proper analysis for purposes

4

before filing this lawsuit, she only demanded $65,000[3] (*id.*; *see also* DE # 5 at 10 (demand for $65,000)). In response, defendant agrees with plaintiff that the most plaintiff can recover under her breach of contract claim is $75,000, which, defendant concedes, would not meet the amount in controversy requirement of § 1332(a). (DE # 8 at 2.)

Defendant, however, argues that the amount in controversy in this case is still well above the $75,000 threshold. (*Id.* at 4-6.) Specifically, defendant first argues that the amount in controversy for plaintiff's breach of contract claim is $65,000. (*Id.* at 4.) Defendant bases this number on a settlement demand that plaintiff made approximately three months prior to filing this suit. (DE # 5 at 10; DE # 8 at 4.) As mentioned above, the Seventh Circuit has noted that a defendant can establish that the amount in controversy requirement has been met by referencing a plaintiff's settlement demands. *Sadowski*, 441 F.3d at 541-42; *see also Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815-17 (7th Cir. 2006). Thus, $65,000 is the amount in controversy for plaintiff's breach of contract claim. *Rising-Moore*, 435 F.3d at 816 ("[Plaintiff's] lawyer has revealed what he thinks his loss amounts to: between $180,000 and $200,000. This is the amount 'in controversy.'").[4]

---

of this opinion.

[3] In plaintiff's amended motion to remand, plaintiff notes that she has accumulated approximately $21,000 in medical bills as a result of this incident. (DE # 7 at 4.) It is not clear whether plaintiff is seeking compensation for these expenses. (*Id.*; DE # 5 at 10; DE # 1.)

[4] Additionally, a settlement demand of $65,000 made prior to the filing of this lawsuit indicates that plaintiff actually believed her breach of contract claim was worth the

5

Second, defendant argues that plaintiff's second claim, a claim of bad faith, puts the amount in controversy in this case over $75,000. (*See* DE # 1 at 4; DE # 8 at 5.) In Indiana, "there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). A claim of bad faith, also called a breach of the duty of good faith, exists when the insurer breaches this duty by denying a claim when it knows that there is no rational, principled basis for doing so. *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 40 (Ind. 2002). Plaintiff seeks punitive damages under that claim. (DE # 1 at 4.)

Punitive damages can satisfy the minimum amount in controversy required for diversity jurisdiction if they are recoverable under state law. *LM Ins. Corp.,* 533 F.3d at 551. Under Indiana law, punitive damages may be recoverable based on an insurer's breach of the duty of good faith and fair dealing, as has been alleged here, when the defendant acted with malice, fraud, gross negligence, or oppressiveness. *Hickman,* 622 N.E.2d at 520. In this case, plaintiff's complaint alleges that defendant has not "attempted in good faith to effectuate prompt, fair, and equitable settlement of [plaintiff's insurance claim] when liability has become reasonably clear." (DE # 1 at 4.) It further alleges that this conduct is a result of bad faith on defendant's part. (*Id.*) These allegations go beyond the tort of breach of good faith and fair dealing, and venture into the territory of malice, fraud, gross negligence, and oppressiveness. *Hickman,* 622

---

full $75,000. A demand of $65,000 indicates that plaintiff was willing to accept slightly less than the full amount in order to avoid the expense and uncertainty of a lawsuit.

N.E.2d at 520. Accordingly, punitive damages could be recovered under Indiana law in this case.

The real question becomes whether or not it is "legally impossible" for plaintiff to recover $10,001[5] in punitive damages against defendant. *LM Ins. Corp,* 533 F.3d at 553. In this case, the court finds that it is not legally impossible. Such an award would not violate the Indiana statute applicable to punitive damages awards, which caps the amount of punitive damages to the greater of either $50,000 or three times the awarded amount of compensatory damages. IND. CODE § 34-51-3-4. Further, the ratio of punitive damages to compensatory damages would be approximately 0.15-to-1, even lower than 1-to-1; such a ratio would not offend the due process sensibilities of the Supreme Court, which has frowned upon ratios exceeding 4-to-1. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425 (2003) (noting that "few awards exceeding a single-digit ratio [e.g., 9-to-1] between punitive and compensatory damages, to a significant degree, will satisfy due process," and that a 4-to-1 ratio "might be close to the line of constitutional impropriety"); *see also Anthony v. Sec. Pac. Fin. Servs., Inc.,* 75 F.3d 311, 315-17 (7th Cir. 1996) (rejecting punitive damages award more than 17 times the amount of actual damages). Finally, a $10,001 punitive damages award would constitute approximately 13% of the jurisdictional amount required in this case, not nearly enough to be

---

[5] This is the amount it would take to raise the amount in controversy from $65,000 to over $75,000.

considered the "bulk" of the jurisdictional amount, which might render the award excessive as a matter of law. *Anthony,* 75 F.3d at 315.

Plaintiff makes several arguments in support of her contention that the amount in controversy in this case is not over $75,000. First, plaintiff directs the court to a settlement counteroffer made by defendant to settle all of plaintiff's claims for $500. (DE # 5 at 12.) The Seventh Circuit has not conclusively determined whether a defendant's settlement offer is relevant to the amount in controversy analysis. *Chase,* 110 F.3d at 428-29. That court has, however, noted that "[i]n a case for money damages, where the amount defendant stands to lose is equal to the amount plaintiff stands to gain from judgment, the appropriate focus in determining the amount in controversy is on *plaintiff's assessment* of the value of her case." *Id.* at 428 (emphasis added). Additionally, as noted above, the inquiry into the amount in controversy focuses on what the plaintiff hopes to recover from the suit. *Oshana,* 472 F.3d at 510-11 ("[T]he amount in controversy is the amount required to satisfy *the plaintiff's demands* in full on the day the suit begins, or in the event of removal, on the day the suit was removed." (emphasis added)); *Rising-Moore,* 435 F.3d at 816 ("The burden, rather, is to show *what the plaintiff hopes to get out of the litigation*; if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award under the threshold." (emphasis added)); *see also Gaffer v. Wal-Mart Stores, Inc.*, No. 10–CV–274, 2010 WL 2990936, at *3 (W.D. Wis. July 27, 2010) (concluding that defendant's settlement offer was irrelevant to amount in controversy analysis).

In this case, even if the court were to assume that defendant's settlement offer is relevant to the amount in controversy analysis, defendant's settlement offer of $500 is not persuasive evidence of the value of plaintiff's claim. As defendant points out in its response brief (DE # 8 at 4), it provided no explanation of how it came up with the $500 figure in its settlement offer. (DE # 5 at 12). In contrast, plaintiff's settlement demand of $65,000 was based on the fact that plaintiff continues "to have difficulties with her right lower leg." (*Id.* at 10.) Plaintiff's attorney went on to explain that plaintiff's "mobility and strength have been compromised." (*Id.*) Finally, plaintiff's attorney explained that the $65,000 settlement demand was made "due to the injuries [plaintiff] sustained and due to the fact that [plaintiff] continues to have difficulties as a result of the accident[.]" (*Id.*). Thus, the court concludes that plaintiff's settlement demand is the better indicator of the value of plaintiff's breach of contract claim.

Second, plaintiff argues that defendant did not request an admission as to whether plaintiff was willing to limit the amount of her recovery to $75,000. (DE # 7 at 5.) Plaintiff, however, cites no authority that holds that defendant was required to do this, and her argument therefore fails. Along these lines, plaintiff also asserts that she is willing to enter into a stipulation that limits her recovery to $75,000 on all claims. (*Id.*) A plaintiff can defeat removal of a diversity case by "irrevocably committing" to limiting her damages to no more than $75,000, *Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011), but that commitment must be made prior to removal from state court. *See id.*; *see also Hunt v. DaVita, Inc.*, 680 F.3d 775, 777-78 (7th Cir. 2012) ("[Plaintiff's] post-removal

9

disclaimer of damages exceeding $75,000 could not defeat federal jurisdiction after a proper removal based on the complaint."). Thus, this argument also fails.

In sum, because the value of plaintiff's breach of contract claim is $65,000, and because it is not legally impossible for plaintiff to recover $10,001 in punitive damages on her bad faith claim, defendant has shown, by a preponderance of the evidence, that the amount in controversy in this case is over $75,000. Moreover, it does not appear "to a legal certainty that [plaintiff's claims are] really for less than the jurisdictional amount." *Oshana*, 472 F.3d at 510–11. Accordingly, federal jurisdiction in this case is appropriate under 28 U.S.C. § 1332(a)(1).

### III. Conclusion

For the foregoing reasons, plaintiff's amended motion to remand is **DENIED.** (DE # 7.) Additionally, plaintiff's original motion to remand is **DENIED AS MOOT**. (DE # 5.)

**SO ORDERED.**

Date: May 14, 2013

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT